**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| JACQUELINE YOUNG, *et al,* |
| Plaintiffs, |
| v. |
| DISTRICT OF COLUMBIA HOUSING AUTHORITY, |
| Defendant. |

**Civil Action No. 13-652 (CKK)**

**MEMORANDUM OPINION**
(March 12, 2014)

Plaintiffs Jacqueline Young, Latheda Wilson, and Deaf-REACH filed suit on May 7, 2013, against the District of Columbia Housing Authority ("DCHA") alleging that DCHA violated Section 504 of the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and the Fair Housing Act ("FHA") by failing to make its program accessible to people with disabilities, specifically, hearing disabilities. Plaintiffs Young and Wilson are two individuals with hearing impairments, and Plaintiff Deaf-REACH is a non-profit organization focused on increasing self-sufficiency among people with hearing loss. Plaintiffs seek injunctive and declaratory relief, as well as compensatory and punitive damages. Presently before the Court is Defendant DCHA's Motion to Dismiss Plaintiffs Young and Wilson's injunctive and declaratory relief claims as moot, and Plaintiff Deaf-REACH's claims for lack of standing and for failure to state a claim. *See* Def.'s Mot. to Dismiss, ECF No. [17], at 1. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of a motion to dismiss, the

---

[1] Defendant's Motion to Dismiss ("Def.'s Mot."), ECF No. [17]; Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n."), ECF No. [19]; Defendant's Reply in Support of

Court finds that Plaintiffs Young and Wilson's claims are not moot and that Plaintiff Deaf-REACH has adequately pled claims under the Rehabilitation Act, the ADA, and the FHA and has organizational standing permitting it to bring these claims. Accordingly, for the reasons stated below, Defendant's Motion is DENIED.

## I. BACKGROUND

### A. Factual Allegations

For the purposes of Defendant's Motion to Dismiss, the Court presumes the following facts pled in Plaintiffs' Complaint to be true, as required when considering a motion to dismiss. Plaintiffs Young and Wilson are participants in the United States Department of Housing and Urban Development Housing Choice Voucher rental subsidy program ("Voucher program") administered by DCHA. Compl., ECF No. [1], at ¶¶ 9-10. Both Plaintiffs have hearing impairments. *Id*. As participants in DCHA's Voucher program, Plaintiffs Young and Wilson must communicate with DCHA and access its services on a regular basis in order to stay in compliance with program regulations and to secure the full benefits of those programs. *Id.* ¶ 14. When a participant's housing circumstances change, such as when a participant desires to move or when the composition of a participant's household or amount of household income changes, the participant must communicate those changes to DCHA. *Id.*

Plaintiff Young has participated in DCHA's Voucher program since at least 2006. *Id.* ¶ 19. On repeated occasions, notwithstanding Plaintiff Young's requests for American Sign Language ("ASL") interpreters made ahead of time, when Plaintiff arrived at DCHA for an appointment, no ASL interpreters were present to assist her in communicating with DCHA staff in the reception area. *Id.* ¶ 20. Plaintiff Young has made multiple requests over several years

Defendant's Motion to Dismiss ("Def.'s Reply), ECF No. [20].

2

that DCHA provide her interpreter services for appointments she scheduled with DCHA, but DCHA has either told her that no interpreter would be provided, asked her to bring a friend or family member to interpret for her, or assured Plaintiff Young that an interpreter would be available only to fail to provide an interpreter at the appointment. *Id.* ¶¶ 23-26. In the over five years that Plaintiff Young has been interacting with DCHA, Plaintiff has been provided an interpreter on only one occasion when a lawyer contacted DCHA on Plaintiff's behalf. *Id.* ¶ 27. When Plaintiff Young obtained permanent custody of her son and needed to communicate the addition to her household in order to obtain a Voucher for a larger apartment, she was unable to obtain the new Voucher "due to DCHA's failure to facilitate effective communication." *Id.* ¶ 34. As a result, as of the time this suit was filed, Plaintiff Young had not been able to secure a Voucher for a larger apartment and thus had not been able to live with her son. *Id.*

Plaintiff Wilson was selected by DCHA to receive a rental assistance Voucher in 2011. *Id.* ¶ 36. At that time, DCHA informed Plaintiff Wilson that she was required to attend an orientation for participants in the Voucher program in October 2011. *Id.* Plaintiff Wilson contacted DCHA and requested an interpreter for the orientation, and was initially told she would receive an interpreter. *Id.* ¶ 38. However, on the morning of the orientation when Plaintiff Wilson sought to confirm that she would indeed be provided an interpreter, DCHA informed her that an interpreter would not be provided. *Id.* ¶ 39. Plaintiff Wilson repeatedly attempted to reschedule her orientation, but was unable to get DCHA to commit to a date on which an interpreter would be provided for her. *Id.* ¶ 40. Instead, DCHA instructed Plaintiff Wilson to proceed with locating a landlord that would accept her Voucher and move into the apartment. *Id.* ¶¶ 41-42. In the spring of 2012, Plaintiff Wilson sought to move to another apartment as the conditions in her current apartment had deteriorated. *Id.* ¶ 44. Plaintiff Wilson

repeatedly contacted DCHA to communicate her need to move to another apartment and her request to transfer her Voucher to the new apartment she had found. *Id.* ¶ 46. However, DCHA did not provide an ASL interpreter so that Plaintiff Wilson could effectively communicate her need to transfer her Voucher. *Id.* ¶¶ 47-50. As a result, at the time this suit was filed, DCHA had "still not informed [Plaintiff Wilson] whether it would transfer her voucher," and Plaintiff Wilson remained in the same apartment. *Id.* ¶¶ 50-51.

Plaintiff Deaf-REACH is designated by statute as an organization tasked with identifying and assisting individuals with disabilities to receive vouchers from DCHA. Compl. ¶¶ 11, 55. Deaf-REACH provides programs, services, and assistance to District of Columbia residents who are deaf or hard of hearing. *Id.* ¶ 53. Deaf-REACH alleges that its staff members "have devoted time and resources to assisting and advising clients with hearing impairments (including Plaintiff Wilson) as they attempt to navigate DCHA's programs and access its services without the interpreting services and auxiliary aids necessary for equal access." *Id.* ¶ 57. Deaf-REACH further alleges that "these expenditures of Deaf-REACH's scarce resources and staff time would not be necessary but for DCHA's persistent failure to comply with its equal access obligations." *Id.* ¶ 61.

Through these acts and omissions, Plaintiffs Young and Wilson allege that DCHA has denied them equal access and reasonable modification in violation of section 504 of the Rehabilitation Act, *id.* ¶¶ 70-91; denied them equal access and reasonable accommodation in violation of the ADA, *id.* ¶¶ 92-109; and violated the FHA by discriminating against Plaintiffs and failing to provide Plaintiffs reasonable accommodations, *id.* ¶¶ 110-121. Plaintiff Deaf-REACH alleges that through DCHA's acts and omissions, DCHA has "frustrated Deaf-REACH's mission and forced Deaf-REACH to divert scarce resources and staff hours to

providing services, assistance, advocacy, and counseling in an effort to counteract the harm caused by Defendant's unlawful conduct," in violation of the equal access requirements of the Rehabilitation Act, *id.* ¶ 81, the ADA, *id.* ¶¶ 94, 99, 101, and the FHA, *id.* ¶¶ 112, 116.

B. *DCHA's Motion to Dismiss*

Defendant DCHA now moves the Court to dismiss Plaintiffs Young and Wilson's claims for injunctive and declaratory relief on the basis that these claims have been rendered moot. DCHA contends that it "has resolved the effects that Plaintiffs claim resulted from its alleged misconduct." Def.'s Mot. at 8. Specifically, DCHA provided a sworn declaration from Joanne Wallington, Quality Assurance Manager for DCHA, attesting that, after the commencement of litigation, Plaintiff Young's request for an upgraded Voucher to move from a two-bedroom to a three-bedroom apartment was approved. Wallington Decl. ¶ 6. In addition, Plaintiff Young attended a transfer Voucher briefing with an ASL interpreter provided by DCHA. *Id.* ¶ 7. Ms. Wallington also attests that, after the commencement of litigation, Plaintiff Wilson attended a recertification appointment and Voucher briefing at which DCHA provided an ASL interpreter. *Id.* ¶ 9. Plaintiff Wilson successfully recertified and was issued an updated Voucher in order for her to begin the search for another unit. *Id.* Finally, Ms. Wallington declares that in late October 2012, "DCHA upgraded its electronic record system and implemented an enhanced alert system that allows staff to create an alert, which notifies a user who is accessing a client's file that the client has made a particular request, such as to communicate through an ASL interpreter." *Id.* ¶ 11. Both Plaintiffs have been identified in DCHA's electronic alert system as requiring an ASL interpreter for communications with DCHA. *Id.* ¶ 12.

Defendant DCHA also moves the Court to dismiss Plaintiff Deaf-REACH's claims for lack of associational standing and for failure to state a claim. However, Plaintiff Deaf-REACH

makes clear in its Opposition to Defendant's Motion to Dismiss that the organization is not seeking to bring claims on behalf of its clients, but is only seeking to bring claims on behalf of itself as an organization and is thus only asserting organizational, not associational standing. As a result, in its Reply brief, Defendant abandons its argument regarding associational standing and asks the court to find "that Deaf-REACH does not have associational standing on the ground that it may only bring claims on behalf of itself." *See* Def.'s Reply at 4. As such, the Court takes as conceded by Defendant that Plaintiff Deaf-REACH is properly proceeding in this action based only on its organizational standing. Accordingly, the Court will only address Defendant's arguments regarding mootness and Plaintiff Deaf-REACH's failure to state a claim.

## II. LEGAL STANDARD

### A. 12(b)(1): Mootness

A motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1). *See Flores v. District of Columbia,* 437 F.Supp.2d 22, 25 n.4 (D.D.C. 2006). That rule imposes on the Court "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Jones v. Ashcroft,* 321 F.Supp.2d 1, 5 (D.D.C. 2004). The "case or controversy" requirement of Article III, section 2, permits federal courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe,* 484 U.S. 305, 317 (1988). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979) (citation omitted), or when "intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren,* 514 F.3d 1312, 1315 (D.C. Cir. 2008) (citation omitted). The "heavy burden of establishing mootness lies with the party asserting a case is moot." *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n,* 628 F.3d 568, 576 (D.C. Cir. 2010) (citation omitted).

6

*B. 12(b)(6): Failure to State a Claim*

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

## III. DISCUSSION

*A. Mootness*

Defendant contends that Plaintiffs Young and Wilson's claims for injunctive and declaratory relief are moot because Defendant provided Plaintiffs with an ASL interpreter so that they could obtain the rental Vouchers they needed and because DCHA put in place a notification system that would alert DCHA staff when a client has a particular need related to his or her disability. In other words, Defendant is effectively claiming that Plaintiffs' claims are moot because DCHA

voluntarily ceased its offending activity.[2]  As a general rule, "voluntary cessation of allegedly

illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does

not make the case moot."  *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (quoting *United

States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).  "A court may nonetheless conclude that

voluntary cessation has rendered a case moot if (1) 'there is no reasonable expectation that the

alleged violation will recur, . . . and (2) interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation.'"  *Sharp v. Rosa Mexicano D.C., LLC*, 496

F.Supp.2d 93, 99 (D.D.C. 2007) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631

(1979) (internal citations omitted)).  Demonstrating that "the challenged conduct cannot

reasonably be expected to start up again" is a "heavy burden."  *Id.* (quoting *Friends of the Earth

v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 189 (2000)).

Plaintiffs claim that DCHA has failed to show that its post-litigation fixes satisfy either prong

of the voluntary cessation exception.  Pl.'s Opp'n. at 8.  The Court agrees.  First, the Court finds

that Defendant has not discharged its heavy burden of showing there is no reasonable expectation

that it will repeat its alleged wrongs.  Plaintiffs' Complaint sets forth a multi-year history of

---

   [2]  Defendant argues in its Reply that it is improper to apply the voluntary cessation exception
to mootness in this case because the relief provided by DCHA is affirmative relief and not a
cessation of illegal conduct.  Def.'s Reply, at 1 n.1.  While Defendant's argument may be
semantically correct, courts have regularly applied the voluntary cessation exception in cases
where a defendant "voluntarily *changes*" its allegedly unlawful conduct, for example, by
affirmatively constructing a handicap accessible sink where one did not exist before.  *See Sharp
v. Rosa Mexicano D.C., LLC*, 496 F.Supp.2d 93, 98 (D.D.C. 2007); *see also Feldman v. Pro
Football, Inc.,* 419 Fed.Appx. 381, 387 (4th Cir. 2011) (voluntary cessation exception analysis
applied to analyze impact of providing closed captioning where none had existed before); *Sheely
v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 (voluntary cessation exception analysis
applied to analyze impact of an affirmative change in policy that defendant claimed went "above
and beyond" statutory requirements).  As the Court finds there is a reasonable expectation of
recurrence of the unlawful conduct, it is inappropriate to find Plaintiff Young and Wilson's
injunctive and declaratory claims moot.

Defendant repeatedly failing to facilitate effective communication with Plaintiffs despite repeated requests by Plaintiffs for ASL interpreters and despite assurances from Defendant on several occasions that ASL interpreters would be provided. Only once litigation began, and then only with the involvement of Plaintiffs' attorneys, did Defendant develop the notification system and provide Plaintiffs with ASL interpreters so that they could obtain the Vouchers they needed at that time. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (noting that "whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit" is relevant to the voluntary cessation analysis); *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 865 (10th Cir. 2003), *overruled in part on other grounds by Verizon Md. Inc v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("When defendants are shown to have settled into a continuing practice . . . , courts will not assume that it has been abandoned without clear proof. It is the duty of the courts to beware of efforts to deal injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." (quoting *Grant*, 345 U.S. at 632 n.5). Although Defendant argues that DCHA could not retract the Vouchers issued to Plaintiffs or erase the information about the Voucher program that they were provided with the assistance of an ASL interpreter after the commencement of litigation, the notification system DCHA put in place to notify staff members of Plaintiffs' need for an ASL interpreter could easily be undone. This notification system is important because it represents the only relief DCHA has offered to prospectively address the communication problems Plaintiffs have experienced. Defendant admits that Voucher recipients must communicate with DCHA "in connection with regularly scheduled eligibility recertifications" or if there are "any changes to the family composition" and must attend a transfer briefing conducted by DCHA if

they wish to be issued a transfer Voucher entitling them to move to another unit. Def.'s Mot. at 2. Thus, even though DCHA has given Plaintiffs the Vouchers they sought and provided ASL interpreters so that Plaintiffs could access information related to those specific Vouchers, Plaintiffs' interactions with DCHA will be ongoing making DCHA's provision of a long-term solution to their alleged communication failures all the more important. Plaintiffs' Complaint clearly encompasses relief from future communication obstacles.

In a similar case involving equal access and accommodations for the hearing impaired where a sports stadium argued that Plaintiffs' ADA claims were mooted by the stadium's provision of closed captioning after litigation began, the Fourth Circuit held that "[g]iven the ease with which defendants could stop providing captioning, we simply cannot say that they have made an affirmative showing that the continuation of their alleged ADA violations is 'nearly impossible.'" *Feldman v. Pro Football, Inc.,* 419 F.App'x 381, 387 (4th Cir. 2011). Likewise, the electronic notification system Defendant put in place here is not the sort of permanent physical change or change that inherently cannot be undone that courts have found to foreclose a reasonable chance of recurrence. *See, e.g., Isasi v. Office of the Attorney General*, 594 F.Supp.2d 12, 14 (D.D.C. 2009), *aff'd* 2010 WL 2574048 (D.C. Cir. Jun. 2, 2010) (finding FOIA case moot where the information plaintiff sought was released because once information is made public, that action cannot be undone); *Sharp,* 496 F.Supp.2d at 98-99 (dismissing as moot claims seeking installation of wheelchair accessible sinks when defendant installed the specific architectural modifications requested by plaintiff "because structural modifications are unlikely to be altered in the future"); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 2007 WL 2007578, at *7-8 (D.D.C. July 6, 2007) (finding case moot once agency issued advisory opinion where plaintiff had sought order precluding the Postal Service from taking certain actions before

the agency issued an advisory opinion on the matter). Defendant's reliance on these cases is thus inapposite. Defendant's new notification system could easily be undone or simply ignored, much as Defendant is alleged to have done in the past when Plaintiffs alerted DCHA of their need for an ASL interpreter prior to their appointments with DCHA, but DCHA still failed to provide an interpreter. Defendant cites to *County of Los Angeles v. Davis* as a comparable case where the offending entity "changed its system" and the case was found moot. Def.'s Mot. at 7. In *Davis*, the Supreme Court found plaintiff's claims of a discriminatory hiring process mooted when the County of Los Angeles instituted a non-discriminatory method of screening job applicants after the commencement of litigation. However, the Court finds this case offers little support for Defendant's mootness argument because *Davis* involved the institution of new hiring practices—a substantial policy endeavor for a County—while the present case simply involves the installation of an electronic notification system that is much more easily undone or ignored. Moreover, in *Davis*, there had "been no suggestion by any of the parties, nor [was] there any reason to believe, that [the County] would significantly alter their present hiring practices if the injunction were dissolved." 440 U.S. at 632. "[T]here [was also] no reason to believe that petitioners would replace their present hiring procedures with procedures that they regarded as unsatisfactory even before the commencement of this litigation." *Id*. at 632-33. Here, by contrast, Plaintiffs make a strong argument that DCHA's lengthy history of failing to provide effective communications to hearing impaired individuals even when alerted in advance to the need undercuts any reasonable expectation that the violation will not reoccur. There is also no suggestion in the pleadings or Complaint that DCHA was dissatisfied with or had been seeking to remedy its communications policy and practices prior to the commencement of litigation as was the case in *Davis*. Accordingly, the Court finds that Defendant has failed to meet its heavy

burden of showing that the challenged conduct could not reasonably be expected to recur.

The Court also finds that Defendant has failed to meet its burden of showing that the fixes it made offer Plaintiffs complete relief. Plaintiffs' complaint was not simply that they had been unable to access the Vouchers they needed, but that all of their interactions with DCHA over multiple years had been stymied by DCHA's failure to provide effective means of communication with hearing impaired persons. As discussed above, it is questionable whether DCHA's proposed relief to Plaintiffs' complaint of ineffective communications—the notification system—will offer any real relief given DCHA's repeated failure over many years to provide ASL interpreters even when notified by Plaintiffs of the need prior to an appointment. There is no indication that DCHA has changed its underlying policy or practice regarding the actual provision of ASL interpreters once DCHA has been informed by the notification system of the need for an interpreter.[3] Moreover, in their Opposition brief, Plaintiffs note that DCHA's "fix" does not address DCHA's "failure to provide interpreters or means of effective communication for hearing-impaired individuals for all interactions with DCHA, including unscheduled visits, walk-ins, and communications in DCHA's reception area." Pl.'s Opp'n. at 11. Indeed, in their Complaint, both Plaintiffs allege great difficulties communicating the purpose of their visit to DCHA staff in the reception area. *See* Compl. ¶¶ 20, 21, 48. Although DCHA's new notification system would alert a DCHA staff member of a hearing-impaired individual's need

---

[3] Defendant argues in a footnote in its Reply that Plaintiffs are wrong to suggest that DCHA has no policy of providing interpreters since "DCHA regulations specifically state that DCHA will provide interpreters." Def.'s Reply, at 2 n.3. However, Plaintiffs allegations show that, despite this policy, DCHA has failed to provide interpreters when they have been requested or when a need for an interpreter has otherwise become apparent. The existence of this policy does not undercut Plaintiffs' argument that the notification system is incomplete relief since there is no indication that DCHA will *actually* change its practice and honor this policy by providing interpreters once notified of the need.

for an ASL interpreter, it is unclear what means of effective communications DCHA would provide to an individual who came for an unscheduled visit. Accordingly, the Court finds that Defendant has failed to meet its heavy burden of showing that it "completely and irrevocably eradicated the effects of the alleged violation." *Sharp*, 496 F.Supp.2d at 99; *see also Center for Food Safety v. Salazaar*, 900 F.Supp.2d 1, 5-6 (D.D.C. 2012) (recognizing that "the availability of any form of relief will save a case from mootness," even if it is only a "partial remedy" and holding "[p]laintiffs' case is not moot because the Court could still grant them some form of effective relief"). Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiffs Young and Wilson's claims on the basis that they have become moot.

*B. 12(b)(6) Failure to State a Claim*

Defendant next contends that Plaintiff Deaf-REACH's claims should be dismissed because they do not contain sufficient factual matter to "state a claim to relief that is plausible on its face." Def.'s Mot. at 9 (quoting *Twombly*, 550 U.S. at 570). Plaintiff Deaf-REACH claims that DCHA has violated Section 504 of the Rehabilitation Act, Title II of the ADA, as well as several provisions of the FHA. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Similarly, Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Finally, the FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of

13

a handicap of (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1). The FHA also makes it unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person." *Id.* § 3604(f)(2).

Defendant argues that Plaintiff Deaf-REACH has failed to "plead facts related to any elements of its claims." Def.'s Reply at 7. Specifically, Defendant contends that "[a]bsent from Deaf-REACH's Complaint are any factual statements explaining who it has helped navigate DCHA's services; who at DCHA it has contacted regarding those services; the nature and purpose of those contacts; when these interactions occurred; the overall timeframe in which the alleged violations occurred; specific contacts made by Deaf-REACH on behalf of hearing impaired individuals; the frequency of those contacts; which auxiliary aids were denied or unavailable; when they were denied or unavailable; or, to what extent these denials impacted Deaf-REACH's operations, finances, or mission." *Id.*

While the Court agrees that Plaintiff Deaf-REACH's claims are sparse on details, the Court nevertheless finds that Plaintiff has met its burden of pleading sufficient facts to show that it is plausibly entitled to relief under Section 504 of the Rehabilitation Act, the ADA, and the FHA. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Ordinarily, a plaintiff need not plead detailed factual allegations, as the rule simply "'contemplate[s] [a] statement of circumstances, occurrences, and events in support of the claim

14

presented[.]'" *Twombly,* 550 U.S. at 555 n.3 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, at 94 (3d ed. 2004)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. However, a plaintiff is not required to plead in his complaint all elements of a prima facie case, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002), nor is he required to "plead law or match facts to every element of a legal theory." *Rouse v. Berry*, 680 F.Supp.2d 233, 236 (D.D.C. 2010) (quoting *Miller v. Insulation Contractors, Inc.,* 608 F.Supp.2d 97, 106 (D.D.C. 2009)) (internal quotation marks and citation omitted). "A complaint should contain enough factual heft to show an entitlement to relief." *Id.* (citing *Twombly,* 550 U.S. at 557). In other words, a complaint needs to plead "only enough facts to [nudge] a claim to relief . . . across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

In its Complaint, Plaintiff Deaf-REACH alleges that DCHA has denied "deaf and hearing-impaired individuals equal access to DCHA's programs and services, and discriminated against them on the basis of disability by failing to provide ASL interpreters, and disregarding requests for ASL interpreters or other essential auxiliary aids required for effective communication." Compl. ¶ 5. These acts, Plaintiff Deaf-REACH alleges, have frustrated Deaf-REACH's mission and caused it to divert its limited resources to address Defendant's unlawful actions. *Id.* ¶¶ 81, 99, 101, 116. Specifically, Plaintiff Deaf-REACH alleges that it has been required to "spend hours accompanying Deaf-REACH clients to DCHA meetings and appointments in an effort to assist them in communicating their needs to DCHA staff in the absence of essential interpreting services," and "hours exchanging telephone calls and emails with DCHA representative

attempting to advocate for their clients." *Id.* ¶¶ 58, 59.  Essentially, Plaintiff Deaf-REACH

alleges that it has been forced to provide the services Defendant DCHA should have provided to

allow hearing impaired individuals to access DCHA's services.  Plaintiff Deaf-REACH's

allegations identify the discriminatory conduct at issue, the nature of the organization's injuries,

and the causal connection between the two.  The additional facts Defendant contends Plaintiff

needs to have pled in order to survive a 12(b)(6) motion are not necessary at this early stage.  A

plaintiff "need not plead a prima facie case of discrimination" in order to survive a motion to

dismiss.  *See Swierkiewicz,* 534 U.S. at 515.  Moreover, contrary to Defendant's claim that

Plaintiff Deaf-REACH should have provided more facts about the extent to which DCHA's

allegedly discriminatory behavior impacted Deaf-REACH's operations, finances, or mission, the

Supreme Court has held that "[a]t the pleading stage, general factual allegations of injury

resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e]

that general allegations embrace those specific facts that are necessary to support the claim.' "

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife

Federation,* 497 U.S. 871, 889 (1990)).  Accordingly, the Court finds that Plaintiff Deaf-REACH

has sufficiently pled a statement of circumstances in support of its Rehabilitation Act, ADA, and

FHA claims, which would entitle it to relief.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss.  An

appropriate Order accompanies this Memorandum Opinion.

*/s/*
_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE
